**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Highline Exploration, Inc., | ) | |
| Nisku Royalty, LP, William R. LaCrosse , | ) | **ORDER ON CROSS MOTIONS** |
| Tammy LaCrosse, Empire Oil Company, | ) | **FOR SUMMARY JUDGMENT** |
| and Kent M. Lynch, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1:19-cv-134 |
| | ) | |
| QEP Energy Company, | ) | |
| | ) | |
| Defendant, | ) | |

Before the Court are cross motions for summary judgment filed on August 13, 2021.  <u>See</u>
Doc. Nos. 44 and 45.  The motions have been fully briefed and are ripe for consideration.  <u>See</u> Doc.
Nos. 46, 48, 58, 60, 61, and 63.  For the reasons set forth below, the Defendant's motion is granted
and the Plaintiffs' motion is denied.


I.      <u>**BACKGROUND**</u>

Plaintiff Highline Exploration, Inc. ("Highline") is an Alabama oil and gas corporation with
its principal place of business in Tuscaloosa, Alabama.  Highline is registered to do business in
North Dakota.  Plaintiff Nisku Royalty LP, ( "Nisku") is a Montana Limited Partnership engaged
in the oil and gas business with its principal place of business in Billings, Montana.  Plaintiffs
William R. Lacrosse and Tammy Lacrosse, (collectively "LaCrosses") are residents of North
Dakota.  William R. Lacrosse is a former President of  Empire Oil Company ("Empire"), a North
Dakota corporation with its principal place of business in Williston, North Dakota.  Plaintiff Kent
M. Lynch ("Lynch"), an individual, is a resident of the State of North Dakota.  Defendant QEP

Energy Company ("QEP") is a Delaware corporation registered to do business in Colorado and North Dakota. QEP's principal place of business is in Denver, Colorado.

This case involves a dispute over the deduction of post-production expenses by QEP from the Plaintiffs' overriding royalty interest ("ORRI"). All the Plaintiffs have extensive experience in the oil and gas industry. In 2006, the Plaintiffs entered into an agreement amongst themselves to acquire mineral leaseholds within an area of mutual interest in McKenzie County, North Dakota, referred to as the South Antelope Prospect. The idea was to package, market, and sell the leases to an operator who would drill the wells while the Plaintiffs would retain an ORRI. Highline acted as the record title holder for all the leases the Plaintiffs acquired.

In 2007, and after the lease acquisition work was complete, the Plaintiffs sold Helis Oil & Gas Company, L.L.C. ("Helis"), a fifty percent (50%) working interest in the South Antelope Prospect, with an option to acquire an additional forty-five percent (45%) of the leased interests. Helis soon exercised its option and acquired a 95% working interest, leaving the Plaintiffs with a 5% working interest. Helis received "an eighty percent (80%) net revenue interest in the Oil and Gas Properties" while the Plaintiffs retained an ORRI "equal to the difference between existing burdens and twenty percent (20%)." See Doc. No. 1-2, p. 10. The acquisition agreement covered all existing and future leases acquired in the South Antelope Prospect area of mutual interest. Helis later sold some of its interest in the South Antelope Project to Black Hills Exploration & Production, Inc., Unit Petroleum Company, and Houston Energy L.P.

The next step in the transaction between the Plaintiffs and Helis was the assignment of the leases, thirty-two in all. In the assignments of leases, the Plaintiffs reserved an ORRI. The reservation provides as follows:

2

> Assignor specifically excludes from this conveyance an overriding royalty interest ("ORRI") equal to the difference between existing burdens and twenty percent (20%) in and to the Leases described on Exhibit "A".  To the extent that Assignor owns or is assigning less than 100% working interest in such Leases or portions of the Lands covered thereby, and/or to the extent that a Lease covers less than 100% of the oil and gas mineral estate in and to the lands covered thereby and covers less than the entire proration unit allocated to a well or wells, the reserved ORRI shall be reduced proportionately, It is the intention of the Assignor to deliver eighty percent (80%) NRI under the Leases.

See Doc. No. 1-3, p. 4.  The existing burdens were the royalty due the mineral lessor, usually a 1/8th (12.5%) or 1/6th (16.67%) interest.

In addition to the thirty-two assignments of oil and gas leases, the Plaintiffs executed thirty-two assignments of an ORRI.  The relevant language used in the first assignment of an ORRI, which differs slightly from the other thirty-one assignments of ORRI, provides as follows:

> Said Overriding Royalty Interest shall be free and clear of all costs and expenses whatsoever of exploring, developing, and operating said property, except ad valorem taxes, gross production taxes, severance taxes, and other taxes levied upon such overriding royalty or the production attributable thereto.

See Doc. No. 46-8, p. 2.

The other thirty-one assignments of an ORRI use the same language regarding costs and expenses, the disputed portion of which provides as follows:

> Further, said overriding royalty interest is to be free and clear of all costs and expenses of development and operation.

See Doc. No. 46-9.

In 2012, QEP acquired Helis' working interest in the South Antelope Prospect and became the operator.  QEP also acquired the Plaintiffs' working interest.  This gave QEP a 100% working interest in the South Antelope Prospect.  The Plaintiffs retained their ORRI.  In 2018, Highline conducted an audit of its mineral and royalty interests, including the royalty payments it was

receiving from QEP.  The audit concluded QEP had been deducting post-production costs from Highline's ORRI since it became the operator of the South Antelope Prospect in 2012.

The Plaintiffs contend the deduction of post-production costs from their ORRI is unauthorized.  The Plaintiffs allege at least $9 million dollars have been wrongfully deducted by QEP.  QEP does not dispute that it has deducted post-production costs from the Plaintiffs' ORRI. Rather, QEP maintains the deduction of post-production costs from an ORRI is standard in the oil and gas industry and there is no language of the ORRI which prohibits them from doing so.  The parties offer differing interpretations of the ORRI language regarding costs and expenses.  The Plaintiffs filed this federal action on July 3, 2019, alleging breach of contract, unjust enrichment, and conversion along with a request for an accounting, interest and attorney's fees, and declaratory relief.  Discovery is complete. Both parties have filed motions for summary judgment which have been fully briefed and are ripe for consideration.


## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law.  Davison v. City of Minneapolis, 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a).  Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  Id.  The purpose of summary judgment is to assess the evidence and determine if a trial is genuinely necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

4

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law.  Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005).  The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact.  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011).  The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1).  If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate.  Matsushita, 475 U.S. at 587.

## III.   LEGAL DISCUSSION

The dispute in this case over the deduction of post-production expenses from the Plaintiffs' ORRI hinges on the meaning of language used in several assignments of oil and gas leases and assignments of overriding royalty interests.  It is undisputed that North Dakota is the forum state and North Dakota law applies.

"A federal court sitting in diversity applies the substantive law of the forum state." El Petron Enters, LLC v. Whiting Res. Corp., No. 1:16-CV-090, 2018 WL 1322391, at *3 (D.N.D. Mar. 14, 2018).  Under North Dakota law, assignments, deeds, and leases are interpreted in the same manner as contracts.  Id.; Hallin v. Inland Oil & Gas Corp., 903 N.W.2d 61, 64 (N.D. 2017).

> The construction of a written contract to determine its legal effect is a question of law.  Contracts are construed to give effect to the mutual intention of the parties at the time of contracting.  The parties' intention must be ascertained from the writing

5

> alone, if possible.  A contract must be construed as a whole to give effect to each
> provision if reasonably practicable.  We will not consider extrinsic evidence when
> a lease is unambiguous and the parties' intent can be ascertained from the writing
> alone.   A contract is ambiguous when reasonable arguments can be made for
> different positions on its meaning.  Whether an ambiguity exists is a question of law.

Blasi v. Bruin E&P Partners, LLC, 959 N.W.2d 872, 876 (N.D. 2021) (internal citations and

quotations omitted).

North Dakota defines an ORRI as follows:

> An overriding royalty interest is an interest in oil and gas production that is carved
> out of the working interest created in an oil and gas lease.  The working interest in
> an oil and gas lease gives its owner the right to export minerals from the land; it is
> an interest that is burdened by the costs of production.  An overriding royalty interest
> is an interest in oil and gas that has been produced, and it is free of the costs of
> production.

Cont'l Res., Inc. v. Armstrong, 2021 ND 171, ¶ 20 (quoting El Petron Enters., LLC, No.

1:16-cv-090, 2018 WL 1322391, at *3 (D.N.D. Mar. 14, 2018)).  This definition is in keeping with

the general understanding of the term in the oil and gas industry.  See 5 Kuntz, Law of Oil and Gas

§ 63.2 (2021) (discussing overriding royalties).  The terms of the lease, nature of the costs and

expenses to be deducted, and the type of royalty determine whether post-production costs are

deductible from the royalty.  Bice v. Petro-Hunt, L.L.C., 768 N.W.2d 496, 500 (N.D. 2009); White

River Royalties, LLC v. Hess Bakken Invs. II, L.L.C., No. 1:19-CV-00218, 2020 WL 6231893, at

*4 (D.N.D. May 22, 2020).  North Dakota often looks to other jurisdictions to find the meaning of

oil and gas industry terminology.  See Abell v. GADECO, LLC, 897 N.W.2d 914, 918 (N.D. 2017)

(looking to other jurisdictions for the meaning of the phrase "drilling operations"); Blasi v. Bruin

E&P Partners, LLC, 959 N.W.2d 872 (N.D. 2021) (examining the meaning of "at the well" in other

jurisdictions); N.D.C.C. §§ 9-07-09 and 9-07-10 (giving effect to industry usage).

In considering the meaning of the ORRI in this case, it is important to remember the well-established oil and gas industry understanding of an ORRI, namely, that it is free of the costs of production but must pay a proportionate share of the post-production costs.  Cont'l Res., Inc. v. Armstrong, 2021 ND 171, ¶ 20; J. Fleet Oil & Gas Corp., L.L.C. v. Chesapeake Louisiana, L.P., No. CV 15-2461, 2018 WL 1463529, at *6 (W.D. La. Mar. 22, 2018); Burlington Res. Oil & Gas Co. LP v. Texas Crude Energy, LLC, 573 S.W.3d 198, 203 (Tex. 2019); Chesapeake Expl., L.L.C. v. Hyder, 483 S.W.3d 870, 873 (Tex. 2016).  Post-production costs are the expenses incurred in bringing the product to market including processing, compression, transportation, marketing, and other costs necessary to prepare raw oil or gas for sale.  Burlington Res. Oil & Gas Co. LP, 573 S.W.3d at 203.  Production costs are those expenses incurred in bringing oil or gas to the surface. BlueStone Nat. Res. II, LLC v. Randle, 620 S.W.3d 380, 386 (Tex. 2021).  Parties to an ORRI may adjust this understanding by the terms of the instrument creating the ORRI.  Bice, 768 N.W.2d at 500.

In this case, the language in question provides that the ORRI shall be "free and clear of all costs and expenses whatsoever of exploring, developing, and operating said property" and "free and clear of all costs and expenses of development and operation."  See Doc. Nos. 46-8, p. 2 and 46-9, p. 2. The ORRI does not use the terms production or post-production costs.

The only costs mentioned in the ORRI are exploration, development, and operating costs and expenses.  These terms are well-understood in the oil and gas industry to be production costs, and none of them can be considered post-production costs.  5 Kuntz, Law of Oil and Gas § 63.2 (2021) ("Ordinarily, the overriding royalty is free of costs incident to development, production, and operation" and "free and clear of drilling, completing, and operating costs"); 3 Williams & Meyers, Oil and Gas Law § 645 (2021) (exploration costs are clearly costs of production); J. Fleet Oil & Gas

Corp., L.L.C., No. CV 15-2461, 2018 WL 1463529, at *6-7 (finding production costs include exploration and development expenses); XAE Corp. v. SMR Prop. Mgmt. Co., 968 P.2d 1201, 1208 (Okla. 1998) (noting production and operation expenses are considered production costs); Martin v. Glass, 571 F. Supp. 1406, 1410 (N.D. Tex. 1983) (noting the terms development, production, and operation expenses in an ORRI refer to production costs); Danciger Oil & Refineries v. Hamill Drilling Co., 171 S.W.2d 321, 323 (Tex. 1943) (finding operating expenses are production costs rather than post-production costs). On the other hand, transportation, gathering, compression, processing, treating, and marketing costs are considered post-production costs. El Petron Enterprises, LLC, No. 1:16-CV-090, 2018 WL 1322391, at *4 (D.N.D. Mar. 14, 2018). While the Plaintiffs contend development and operating costs may be considered post-production costs, they offer no case law to support their assertion. The Court finds *Danciger*, *J. Fleet*, *XAE Corp.*, and *Martin* persuasive and concludes exploration, development, and operating costs are production costs.

The Court finds the language used in the ORRI to be plain, clear, and unambiguous. The parties bargained for a traditional ORRI, free of the costs of production, in which they share pro rata all post-production costs. Having determined that the ORRI is unambiguous, the Court has not considered any extrinsic evidence of intent, expert opinions and reports, or the parties' course of performance.

The Plaintiffs arguments to the contrary are unpersuasive. First, the Plaintiff's contend the reference to exploration, development, and operational costs in the ORRI must have meant post-production costs because otherwise the terms would be of no effect. However, is not unusual for the drafter of an ORRI to specify that an ORRI is free of production costs even though an ORRI by its very nature is free of production costs. Hyder, 483 S.W.3d at 873 (noting the drafters of ORRI are not always driven by logic). This appears to be exactly what happened in this case, the drafter

of the ORRI included surplusage.  In *Hyder* the ORRI provided for "perpetual, cost-free (except only

its portion of production taxes) overriding royalty of five percent (5.0%) of gross production

obtained) which was held to mean free of both production and post-production costs Id. at 875.  The

ORRI in *Hyder* differs from the ORRI in this case in that contained no qualifying or limiting

language and was based upon gross production which means undiminished by deduction.  Id. at 874.

Tellingly, the ORRI in this case specifically lists production costs as those from which the ORRI

is exempt while making no mention of post-production costs.

Secondly, the Plaintiffs contend their ORRI is based on gross proceeds from which post-

production costs cannot be deducted.  Newfield Expl. Co. v. State ex rel. N. Dakota Bd. of Univ. &

Sch. Lands, 931 N.W.2d 478, 480 (N.D. 2019) (holding royalties due the State of North Dakota on

a lease which states the royalty is due on "any gas, produced and marketed, based on gross

production or the market value thereof . . . such value to be based on gross proceeds of sale" did not

permit the deduction of post-production costs).  *Newfield* did not involve an ORRI, but rather a lease

between the State of North Dakota and the producer.  Id.  The use of the term "gross proceeds"

means any royalty is due without the deduction of post-production costs while the use of the term

"net proceeds" means the post-production costs may be deducted.  Id. at 480.  The ORRI in this case

is very different from the royalty at issue in *Newfield*.  It does not address post-production costs and

makes no mention of "gross proceeds" or "net proceeds."

There is a reference to delivering an 80% net revenue interest to Helis in the assignment of

oil and gas leases.  See Doc. No. 46-7, p. 3.  "A net revenue interest is a share of the working interest

and is subject to satisfaction of all royalty, overriding royalty, oil payments, or other nonoperating

interests."  Cont'l Res., Inc. v. Armstrong, 2021 ND 171, ¶ 23.  This reference speaks to the

producer's interest in relation to the 20% interest retained by the mineral owner and the owner of

9

the ORRI. The 80% net revenue interest is not relevant to the ORRI and has nothing to do with the allocation of costs and expenses. In any case, net generally means with deduction and gross means without deduction. See West v. Alpar Res., Inc., 298 N.W.2d 484, 490 (N.D. 1980). The suggestion a net revenue interest is the same as gross proceeds is unpersuasive.

In the absence of any language to the contrary, the ORRI in question can only be considered a standard oil and gas industry ORRI in which the owner of the ORRI shares in all post-production expenses. Newfield, 931 N.W.2d at 480. Parties may contract around a general rule of allocating expenses if they so choose. Id. In this case, they chose not to do so.

## IV.   **CONCLUSION**

The Court concludes it was not improper for QEP to deduct post-production costs from the Plaintiffs' ORRI. Accordingly, the Defendant's motion for summary judgment (Doc. No. 44) is **GRANTED** and the Plaintiffs' motion for summary judgment (Doc. No. 45) is **DENIED**. The Defendant's motion to exclude expert testimony (Doc. No. 50) is **DENIED** as moot. The motions for hearing (Doc. Nos. 47 and 57) are **DENIED**.

**IT IS SO ORDERED**.

Dated this 18th day of October, 2021.

/s/ Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court